UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

AMANDA G.,[1]                                      Case No. 1:20-cv-987
    Plaintiff,                                       Litkovitz, M.J.

    v.

COMMISSIONER OF                           ORDER
SOCIAL SECURITY,
    Defendant.

Plaintiff Amanda G. brings this action pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of Errors (Doc. 20), the Commissioner's response (Doc. 25), and plaintiff's reply (Doc. 26).

**I. Procedural Background**

Plaintiff filed her DIB application in May 2019 alleging disability since December 19, 2018. (Tr. 15). Plaintiff alleged the following impairments:

> Stage III uterine cancer, 18 lymph nodes removed due to [s]tage I lymphedema, currently treating with chemotherapy, Lynch Syndrome, [c]hemo brain, neuropathy in bilateral toes,[] chronic bone pain with aches and swelling, [l]eft knee ACL surgery 1/9/19 with continued difficulty. Changed [c]ondition 10/2/19. I have neuropathy in my hands and arms that is causing numbness and tingling. I have increased joint pain that is causing trigger finger in both hands. I can not [sic] hold objects without dropping them. I have anxiety and I am not able to stay on task.[] New Condition 10/2/19. I have severe arthritis throughout my body. I have pain while walking, sitting or ridding [sic] in the car too long.[]

(Tr. 84). Plaintiff's application was denied initially and on reconsideration. Plaintiff, through counsel, sought and was granted a *de novo* hearing before administrative law judge (ALJ)

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

Gregory Kenyon on July 14, 2020. Plaintiff and a vocational expert (VE) appeared and testified. (Tr. 32-71). On August 5, 2020, the ALJ issued an unfavorable decision. (Tr. 12-24). The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6).

**II. Analysis**

    **A. Legal Framework for Disability Determinations**

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2022.

2. [Plaintiff] has not engaged in substantial gainful activity since December 19, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. [Plaintiff] has the following severe impairments: residuals of endometrial cancer, degenerative joint disease of the left knee, anxiety, and depression (20 CFR 404.1520(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) subject to the following additional limitations: (1) occasional crouching, crawling, kneeling, stooping, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, or scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) occasional use of the left lower extremity for pushing, pulling, and foot controls; (5) frequent use of the hands for handling, fingering and feeling; (6) [plaintiff] is limited to performing simple, repetitive tasks with an SVP of 1 or 2; (7) no fast paced production work or jobs which involve strict production

    quotas; and (8) [plaintiff] is limited to performing jobs which involve very little, if any, change in the job duties or the work routine from one day to the next.

6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[2]

7. [Plaintiff] was born [i]n . . . 1971 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. [Plaintiff] has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [plaintiff] is "not disabled," whether or not [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 404.1569 and 404.1569(a)).[3]

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from December 19, 2018, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 17-24).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, __

---

[2] Plaintiff's past relevant work was as a hair stylist, a light exertion, skilled position. (Tr. 23, 67).
[3] Relying on the VE's testimony, the ALJ found that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as cashier (876,000 jobs in the national economy), routing clerk (105,000 jobs in the national economy), and hotel maid (220,000 jobs in the national economy). (Tr. 24, 68).

U.S. __, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

**D. Specific Errors**[4]

Plaintiff asserts that "the ALJ reversibly erred in evaluating the medical evidence and [plaintiff's] symptom severity and failed to carry the Step Five burden." (Doc. 20 at PAGEID 1284). Plaintiff's arguments, however, are actually directed toward the ALJ's assessment of her residual functional capacity (RFC) at step four of the sequential evaluation process. Plaintiff argues that the ALJ's RFC assessment finding that she could perform light work and frequently use her hands was not supported by substantial evidence. In particular, plaintiff argues that the ALJ did not appropriately consider various medical evidence related to her neuropathy, carpel tunnel syndrome (CTS), and lymphedema[5] that was consistent with her alleged symptom severity and improperly interpreted raw medical data from two medical sources: Yixin Lin,

---

[4] Plaintiff does not argue that the ALJ erred in evaluating her mental impairments; therefore, plaintiff has waived any challenges regarding her mental impairments. *See Watts v. Comm'r of Soc. Sec.*, No. 1:16-cv-319, 2017 WL 430733, at *11 (S.D. Ohio Jan. 31, 2017), *report and recommendation adopted*, 2017 WL 680538 (S.D. Ohio Feb. 21, 2017) (argument waived where plaintiff did not "develop it legally or factually in the Statement of Errors").
[5] "*Lymphedema* is swelling due to build-up of lymph fluid in the body." https://www.cdc.gov/cancer/survivors/patients/lymphedema.htm (last visited July 18, 2022).

M.D., and Roseanne McKay, C.N.P.[6] Plaintiff further argues that her strong work history supported finding that her alleged symptom severity was consistent with the rest of the record.

In response, the Commissioner argues that the ALJ acknowledged evidence reflecting plaintiff's issues related to neuropathy, CTS, and lymphedema but nevertheless appropriately determined that the record demonstrated a level of severity inconsistent with that alleged by plaintiff. The Commissioner argues that plaintiff's arguments otherwise effectively ask the Court re-weigh the medical evidence. The Commissioner also argues that the ALJ did not interpret raw medical data and instead properly assessed plaintiff's RCF based on the evidence presented. The Commissioner lastly argues that the ALJ was not required to explicitly discuss plaintiff's strong work history.

In reply, plaintiff reiterates her argument that the ALJ improperly interpreted raw medical data (an EMG) when he concluded that, despite "severe" findings (*see* Tr. 947), the "extent of any denervation in [plaintiff's] hands is not so severe as to limit [plaintiff] to occasional hand use." (Doc. 21). Plaintiff also asserts that the Commissioner's admission that the ALJ did not point to specific evidence when discussing her lymphedema (*see* Doc. 25 at PAGEID 1315) renders her arguments invalid post-hoc rationalization of the ALJ's decision.

1. The ALJ's decision

Regarding plaintiff's physical impairments, the ALJ found:

[Plaintiff] has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) subject to the following additional limitations: (1) occasional crouching, crawling,

---

[6] Plaintiff also alludes to error in the ALJ's consideration of C.N.P. McKay's opinion: "The ALJ rejected treating CNP McKay's opinion on the basis that [plaintiff]'s upper and lower extremity impairments are not 'so severe' to support CNP McKay's findings but, again, Dr. Lin's findings on the objective medical data are more consistent with Ms. McKay's opinions than with the ALJ's findings."). Because this is the extent of plaintiff's discussion of C.N.P. McKay's opinion, the Court deems any argument regarding the ALJ's assessment of her opinion waived. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

> kneeling, stooping, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, or scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) occasional use of the left lower extremity for pushing, pulling, and foot controls; [and] (5) frequent use of the hands for handling, fingering and feeling. . . .

(Tr. 19).

The ALJ discussed certain of plaintiff's activities of daily living—noting that plaintiff drove; attended to grooming, hygiene, and meal preparation without significant difficulty; and cared for her five step-children. (Tr. 20). Regarding plaintiff's neuropathy, the ALJ referred generally to several exhibits of medical records and concluded that it was not so severe as to significantly limit plaintiff's mobility, and plaintiff could use her hands frequently but not constantly. (Tr. 21, referring to Tr. 623-928). Regarding plaintiff's CTS, the ALJ referred generally to a record of plaintiff's December 2019 visit with neurologist Dr. Lin. (Tr. 21, referring to Tr. 945-52). The ALJ concluded that "[t]he extent of any denervation in her hands is not so severe as to limit the claimant to occasional hand use." (Tr. 21). Regarding plaintiff's lymphedema, the ALJ acknowledged evidence of this condition in the record and plaintiff's purported need to elevate her legs during the day due to leg swelling (*see* Tr. 48-49), but he concluded that the record evidence did not reflect a condition "so severe that [plaintiff] would need to elevate her legs throughout the day." (Tr. 21). The ALJ did not cite any particular records or exhibits in support of this conclusion.

The ALJ summarized C.N.P. McKay's opinion as diagnosing plaintiff with neuropathy of the upper extremities; limiting plaintiff to lifting 10 pounds occasionally, lifting five pounds frequently, standing and/or walking for only two to four hours in an eight-hour workday, and occasional postural limitations; and finding that plaintiff would be absent three times per month

7

and off task up to 2/3 of the workday. (Tr. 22, referring to Tr. 996-1000). The ALJ found C.N.P. McKay's opinion "not persuasive" for the following reasons:

> [Plaintiff's] treatment records do not show that either [plaintiff]'s lower extremity edema or the neuropathy affecting her hands and feet are so severe that she would either be absent three times per month or off task 2/3 of the time. There is also no basis to limit [plaintiff] to sedentary level work on this record.

(*Id.*).

2. <u>Symptom-consistency analysis</u>

ALJs are to "consider all of the evidence in an individual's record" and determine whether the individual is disabled by examining "all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the individual's record." SSR[7] 16-3p, 2016 WL 1119029, at *2 (superseding SSR 96-7p). ALJs also evaluate what the agency formerly termed the "credibility" of a plaintiff's statements about his or her symptoms. *See, e.g.*, *Rogers*, 486 F.3d at 246-49. In March 2016, the agency eliminated its use of the term "credibility" and clarified "that subjective symptom evaluation is not an examination of an individual's character. . . ." SSR 16-3p, 2016 WL 1119029, at *1. To avoid such mistaken emphasis, this analysis is now characterized as the "consistency" of a claimant's subjective description of symptoms with the record. *See Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 n.3 (6th Cir. 2020) (citing *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016)).

A two-step inquiry applies to symptom evaluation. The ALJ first determines if the record contains objective medical evidence of an underlying medically determinable impairment that

---

[7] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).

could reasonably be expected to produce the individual's symptoms. SSR 16-3p, 2016 WL 1119029, at *3; *see also* 20 C.F.R. § 404.1529(a); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003). Step two of symptom evaluation shifts to the severity of a claimant's symptoms. The ALJ must consider the intensity and persistence of the symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. *See* 20 C.F.R. §§ 404.1529(a) and (c); SSR16-3p, 2016 WL 1119029, at *4. In making this determination, the ALJ will consider the following:

(i) Your daily activities;

(ii) The location, duration, frequency, and intensity of your pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

An ALJ may not consider only objective medical evidence in determining disability unless this evidence alone supports a finding of disability. SSR 16-3p, 2016 WL 1119029, at *5 ("If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms.");

9

20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). Moreover,

> [i]t is . . . not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3p, 2016 WL 1119029, at *9. *See also id.* at *7 (noting that the ALJ "will discuss the factors pertinent to the evidence of record").

At the same time, the ALJ is not required to cite or discuss every factor used to evaluate the consistency of a plaintiff's description of symptoms with the record evidence. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) ("[T]he ALJ expressly stated that she had considered [the predecessor to SSR 16-3p], which details the factors to address in assessing credibility. There is no indication that the ALJ failed to do so. This claim therefore lacks merit. . . ."). Further, the ALJ's determination regarding the consistency of a claimant's subjective complaints with the record evidence is "to be accorded great weight and deference. . . ." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citing *Villarreal v. Sec'y of H.H.S.*, 818 F.2d 461, 463 (6th Cir. 1987)).[8]

---

[8] The *Walters* court noted that substantial deference was appropriate due in large part to an ALJ's unique observation of a witness's "demeanor and credibility." With the elimination of the term "credibility" in SSR 16-3p, it is questionable whether an ALJ's observations should be given any deference. At least one Sixth Circuit decision subsequent to the enactment of SSR 16-3p, however, has retained the notion of deference to the ALJ in the symptom-consistency context. *See, e.g., Lipanye*, 802 F. App'x at 171 ("It is for the administrative law judge, not the reviewing court, to judge the consistency of a claimant's statements.").

10

As related to neuropathy, the ALJ generally identified five exhibits (totaling about 300 pages of medical records) and concluded that the condition was "not so severe that [plaintiff's] mobility is significantly limited." (Tr. 21). Within that swath of medical records, however, the ALJ did not specify what he found to be particularly inconsistent with the alleged severity of plaintiff's neuropathy symptoms. Similarly, as related to CTS, the ALJ pointed to one exhibit and summarily concluded that "any denervation in [plaintiff's] hands is not so severe as to limit [her] to occasional hand use." (*Id.*). The record to which the ALJ referred (a December 2019 visit with neurologist Dr. Lin) does not include any opinion on plaintiff's functional abilities. (Tr. 945-52). It does, however, include objective medical evidence (an EMG report) that plaintiff exhibited severe left CTS and moderate right CTS, Dr. Lin's recommendation that plaintiff wear a splint, and Dr. Lin's referral to surgery. (Tr. 947). The Court cannot discern from the ALJ's decision how the alleged severity of plaintiff's CTS was inconsistent with that or any other medical record. *See Rogers*, 486 F.3d at 248 (an ALJ's assessment of the consistency of a plaintiff's subjective symptoms with the record "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.") (quoting SSR 96-7p[9]). The Commissioner ventures that the relative lack of medical evidence in the record related to CTS accounts for the ALJ's conclusion relative thereto (*see* Doc. 25 at PAGEID 1314, 1316), but the ALJ made no such connection in his decision. *See Miller v. Berryhill*, No. 3:16-cv-94, 2017 WL

---

[9] "Although SSR 16-3p supersedes SSR 96-7p, 'according to the very language of SSR 16-3p, its purpose is to 'clarify' the rules concerning subjective symptom evaluation and not to substantially change them.'" *Blocker v. Comm'r of Soc. Sec.*, No. 2:17-cv-513, 2018 WL 3215507, at *9 (S.D. Ohio July 2, 2018) (quoting *Brothers v. Berryhill*, No. 5:16-cv-1942, 2017 WL 2912535, at *10 (N.D. Ohio June 22, 2017)), *report and recommendation adopted*, 2018 WL 4398243 (S.D. Ohio Sept. 14, 2018).

11

1021313, at *8 (S.D. Ohio Mar. 16, 2017) (explaining that the Court generally should not accept post-hoc rationalizations for agency action unless any associated error is harmless).

As related to lymphedema, the Commissioner acknowledges that the ALJ did not point to any medical evidence at all in support of his conclusion that the condition "was not so severe that [plaintiff] would need to elevate her legs throughout the day." (Tr. 21). The Commissioner instead points to several medical records between June 2019 and May 2020 not mentioned by the ALJ but which suggest that the condition was either not always present or less severe than alleged by plaintiff. (*See* Doc. 25 at PAGEID 1315). The Commissioner relies on *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011), in which the Sixth Circuit held that an ALJ "is not required to analyze the relevance of each piece of evidence individually. Instead, the regulations state that the decision must contain only 'the findings of facts and the reasons for the decision.'" *Id.* (quoting 20 C.F.R. § 404.953).

The Court is not assuaged by the Commissioner's citation to *Bailey*. In the sentence immediately preceding the quoted portion, the Sixth Circuit acknowledged that an ALJ is nevertheless "required to . . . provide specific reasons for crediting or discrediting a claimant's testimony." *Id.* (citing *Rogers*, 486 F.3d at 248 & n. 5). The ALJ has not done so here with respect to plaintiff's neuropathy, CTS, or lymphedema.

The only other explicit discussion of these physical impairments came in the ALJ's discussion of C.N.P. McKay's opinion. (*See* Tr. 22). There again, however, in finding C.N.P. McKay's opinion not persuasive, the ALJ did not identify a single specific record that does not support or is inconsistent with her opinion. The ALJ's entire assessment of the opinion is the following:

> [Plaintiff's] treatment records do not show that either [plaintiff]'s lower extremity edema or the neuropathy affecting her hands and feet are so severe that she would

> either be absent three times per month or off task 2/3 of the time. There is also no basis to limit [plaintiff] to sedentary level work on this record.

(*Id.*). Moreover, the ALJ said nothing that necessarily suggests that C.N.P. McKay's manipulative limitations were inconsistent with or not supported by the record.

In conclusion, the ALJ's assessment of the consistency with the record of plaintiff's alleged symptoms of neuropathy, CTS, and lymphedema is not based on substantial evidence. *See Rogers*, 486 F.3d at 248; SSR 16-3p, 2016 WL 1119029, at *9 (The ALJ's decision "must contain specific reasons for the weight given to [plaintiff's] symptoms . . . and be clearly articulated so [plaintiff] and any subsequent reviewer can assess how the adjudicator evaluated [plaintiff's] symptoms."). As such, the ALJ's RFC determination is not based on substantial evidence.

Notwithstanding this conclusion, the Court notes that the ALJ was under no obligation to explicitly address plaintiff's work history in his assessment of the consistency of plaintiff's symptoms with the record. While a claimant's work history is part of the 20 C.F.R. § 404.1529(c)(3) analysis, it need not be articulated by the ALJ in his decision. The Sixth Circuit authority relied on by plaintiff stands only for the proposition that work history *may* be considered as part of this analysis and not that it *must be articulated*. *See Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994) (listing a long work history as a factor supporting the plaintiff's credibility).

  3. Substitution of the ALJ's "medical opinions"

Plaintiff also argues that the ALJ improperly substituted his own medical opinions for those of Dr. Lin and C.N.P. McKay. For this argument, plaintiff first cites *Isaacs v. Astrue*, No. 1:08-cv-828, 2009 WL 3672060, at *11 (S.D. Ohio Nov. 4, 2009), in which the Court held that the ALJ had improperly based his medium-work RFC on his own medical opinion where the

13

record contained "no medical source opinion supporting the ALJ's finding. . . ." Plaintiff next cites *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009), in which the Sixth Circuit held that the ALJ had erred by rejecting a medical opinion as "implausible" based on the ALJ's own judgment of the medical data.

Neither case convinces the Court that the ALJ committed such error here. Unlike in *Simpson*, here, Dr. Lin did not provide any opinion on plaintiff's functional limitations. C.N.P. McKay offered such an opinion, but the ALJ did not find it persuasive, and plaintiff did not challenge that finding. (*See supra* n.6). The ALJ instead relied on the opinions of the state agency physicians and, in particular, the opinion on reconsideration finding plaintiff capable of light-exertion work; never able to climb ladders, ropes, or scaffolds; and limited to frequently handling, fingering, and feeling with her bilateral upper extremities. (*See* Tr. 89-90). Plaintiff does not challenge the ALJ's assessment of these opinions and any argument thereto is therefore waived. *See Watts*, 2017 WL 430733, at *11. The ALJ's unchallenged reliance on the state agency opinions distinguishes this case from *Isaacs*.

### III. Conclusion

The ALJ's decision failed to "clearly articulate[]" any "specific reasons for the weight given to [plaintiff]'s symptoms[,]" leaving the Court without a way to meaningfully evaluate it. SSR 16-3p, 2016 WL 1119029, at *9. The ALJ's RFC determination is therefore not based on substantial evidence. In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter. Nor does the current record adequately establish plaintiff's entitlement to continued benefits. *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). This matter should be remanded for further proceedings, including a renewed

assessment of the consistency of plaintiff's subjective symptoms of neuropathy, CTS, and lymphedema with the record.

Based on the foregoing, plaintiff's Statement of Errors (Doc. 20) is **SUSTAINED**, and the Commissioner's non-disability finding is **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS** consistent with this Order.

Date: 7/26/2022

Karen L. Litkovitz
United States Magistrate Judge